IN THE CIRCUIT COURT OF OHIO COUNTY, WEST VIRGINIA

JOHN KLAY,

    Plaintiff,

v.                                                  Civil Action No. 08-C-246

AXA EQUITABLE LIFE

INSURANCE COMPANY,

    Defendant.

## COMPLAINT

Now comes your plaintiff, John Klay, and for his Complaint against the defendant, AXA Equitable Life Insurance Company, a foreign corporation, states and alleges as follows:

1. Plaintiff John Klay at all times material herein has maintained a dual residency in both Pennsylvania and West Virginia.

2. At all times material herein, Plaintiff Klay's career has been as a cardiothoracic and vascular surgeon, and he has been the sole owner of a medical practice located in Ohio County, West Virginia.

3. Defendant, AXA Equitable Life Insurance Company, formerly known as The Equitable Life Insurance Society of the United States (hereinafter "Equitable"), is a foreign corporation licensed to do business in the State of West Virginia.

4. Beginning in approximately 1984, Robert King, an authorized agent and representative of Equitable, marketed and sold to Plaintiff Klay a series of disability insurance policies issued by Equitable.

WH4914095.1

EXHIBIT B

5. Mr. King, as an authorized agent and representative of Equitable, warranted to Plaintiff Klay that in the event he became ill and could no longer maintain his current level of productivity as a cardiothoracic and vascular surgeon, that Plaintiff Klay would be entitled to the total disability policy limits under each of the six policies.

6. At all times material herein, Plaintiff Klay has been insured under the following six disability insurance policies issued by Equitable: Policy # 84 702 339, effective February, 26, 1984; Policy # PN 85 706 366, effective June 26, 1985; Policy # M 89 730 560, effective December 12, 1989; Policy # PN 88 703 537, effective February 26, 1988; Policy # PJ 87 702 631, effective April 7, 1987, and; Policy # PN 88 713 268, effective June 26, 1988 (hereinafter sometimes "the policies").

7. The six disability policies provide insurance coverage for "Total Disability," defined as "your inability due to injury or sickness to engage in the substantial and material duties of your regular occupation."

8. In addition, Mr. King sold plaintiff Klay riders for "Residual Disability" coverage, as well as "Cost of Living Adjustments."

9. Beginning sometime in 2006 and earlier, Plaintiff Klay became seriously ill. In July of 2006, while in the process of attempting to obtain life insurance from another carrier, plaintiff Klay was diagnosed with uncontrolled diabetes mellitus, uncontrolled hypertension, hyperlipidemia and exogenous obesity.

10. At a meeting held in July of 2006 with Tim Buggy and Guy Filewich, authorized representatives and agents of defendant Equitable, Plaintiff Klay advised both Mr. Buggy and Mr. Filewich of his recent diagnosis, as well as the fact that he had been turned down for life insurance due to his condition.

11. Plaintiff Klay immediately began treatment with Dr. Sara Wetzel-Saffle. However, plaintiff Klay's condition continued to deteriorate and in April of 2007, Plaintiff Klay was hospitalized after he suffered a deep vein thrombosis and bilateral pulmonary embolus which nearly resulted in Plaintiff Klay's death.

12. Plaintiff Klay's condition is permanent. His treating physician has advised that Plaintiff Klay's condition will continue to deteriorate if he is unable to maintain a regimen of continued treatment and rest.

13. As a result of Plaintiff Klay's medical condition, since approximately July of 2006, Plaintiff Klay has been totally disabled, and he has been unable to perform the substantial and material duties that he previously performed as a cardiothoracic and vascular surgeon. Plaintiff therefore has, since July of 2006, qualified for total disability protection under the Policies.

14. Plaintiff Klay has submitted a claim to Equitable for total disability coverage under the Policies.

15. Equitable's authorized third party administrator, Disability Management Services, Inc. ("DMS"), has delayed the investigation and settlement of Plaintiff Klay's claim with unreasonable demands for unnecessary and cumulative documentation designed to intimidate Plaintiff Klay as a claimant.

16. Out of sheer frustration, plaintiff Klay contacted Marshall Saunders of Equitable's customer service division to request assistance with the handling of his claim and to express frustration over the treatment he, a 24 year insured with Equitable, had received from DMS. Mr. Saunders offered no assistance or intervention with the processing of plaintiff Klay's claim.

17. At all times material herein, Plaintiff Klay paid defendant Equitable valuable premiums in order to obtain and procure the insurance protections set forth in the six disability policies.

18. To date, Equitable has failed to conduct a proper investigation and settlement of Plaintiff Klay's claim for total disability payments under the six applicable disability policies.

19. As a result of Equitable's direct conduct, Plaintiff Klay has been forced to institute this litigation in order to obtain the benefits of the six disability policies for which he has submitted timely premiums over the past 24 years.

20. All of the averments contained in paragraphs 1 though 19 are incorporated in each and every Count of this Complaint.

## COUNT I
## DECLARATORY JUDGMENT

21. This declaratory judgment action is brought pursuant to Rule 57 of the West Virginia Rules of Civil Procedure and West Virginia Code § 55-13-1 et seq.

22. Plaintiff Klay seeks to have this Court judicially determine that the Policies issued by defendant Equitable provide coverage to plaintiff Klay for his claim of total disability, and that Equitable is legally obligated to satisfy plaintiff Klay's claim of total disability, and further, that Equitable's failure to do so to date has caused plaintiff Klay damages as set forth herein.

## COUNT II
## BREACH OF CONTRACT

23. Defendant Equitable breached its contract with Plaintiff Klay in failing to conduct a proper investigation followed by a fair and equitable resolution of Plaintiff Klay's claim.

24. As a direct and proximate result of the acts set forth in this Count of the Complaint, Plaintiff Klay was damaged and injured as is hereinafter set forth.

## COUNT III
## VIOLATION OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

25. Implicit in the six disability policies issued by Equitable to Plaintiff Klay is Defendant Equitable's implied covenant of good faith and fair dealing which was applicable at all material times herein.

26. Defendant Equitable violated the implied covenant of good faith and fair dealing in failing to conduct a reasonable and proper investigation, and further, in its continued refusal to pay Plaintiff Klay's claim for total disability.

27. As a direct and proximate result of the acts of Equitable set forth in this Count of the Complaint, Plaintiff Klay was damaged and injured as is hereinafter set forth.

## COUNT IV
## VIOLATION OF THE UNFAIR CLAIMS SETTLEMENT AND PRACTICES ACT

28. At all times material herein, Defendant Equitable was regulated by the Unfair Claims Settlement Practices Act of West Virginia, West Virginia insurance regulations and other laws governing the handling of disability insurance claims in the State of West Virginia.

29. Defendant Equitable violated the Unfair Claims Settlement Practices Act of West Virginia, W. Va. Code § 33-11-4(9), with such frequency as to indicate a general business practice, including, but not limited to, the following acts:

   (a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

   (b) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

   (c) Refusing to pay claims without conducting a reasonable investigation based upon all available information;

 (d) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed, and;

 (e) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.

30. As a direct and proximate result of the acts of the defendant as set forth in this Count of the Complaint, and as a direct and proximate result of the acts of the defendant listed in all preceding Counts set forth in this Complaint, Plaintiff Klay was damaged and injured as follows:

 (a) He has suffered emotional distress, annoyance and inconvenience;

 (b) He has suffered additional deterioration of his medical condition;

 (c) He has suffered financially as a result of Equitable's failure to timely, fairly and equitably settle Plaintiff Klay's claim, and;

 (d) He has been forced to institute litigation in order to obtain the benefits to which he is entitled under the terms of this policies.

## COUNT V
## PUNITIVE DAMAGES

31. The acts of Defendant Equitable as set forth in this Complaint were willful, wanton and malicious and/or reckless and/or done with reckless disregard for the rights of Plaintiff Klay and/or were done with actual malice and as such punitive damages should be assessed.

 WHEREFORE, your Plaintiff, John Klay, respectfully requests a judgment against the Defendant, AXA Equitable Life Insurance Company, for compensatory damages and punitive damages, together with a judgment against the defendant for all costs, including, if

permitted, attorney fees, and such other and general relief as a judge and/or jury shall determine is just and fair.

<u>**PLAINTIFF DEMANDS A TRIAL BY JURY**</u>

Respectfully Submitted,

JOHN KLAY,
By Counsel,

_____
William D. Wilmoth, Esq. (WV Bar #4075)
Melanie Morgan Norris, Esq. (WV Bar #8581)
STEPTOE & JOHNSON PLLC
1233 Main Street, Suite 3000
P.O. Box 751
Wheeling, WV  26003-0751