IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JOHN KLAY,

  Plaintiff,

v.            Civil Action No. 5:08CV118
                 (STAMP)
AXA EQUITABLE LIFE INSURANCE COMPANY,

  Defendant.

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE**

### I. Procedural History

The above-styled civil action is before this Court as a result of a notice of removal filed by the defendant, in which the defendant asserts that federal jurisdiction is pursuant to 28 U.S.C. § 1332. The plaintiff commenced this civil action in the Circuit Court of Ohio County, West Virginia, seeking disability benefits from six different insurance policies held with the defendant. Following removal of the action to this Court, the defendant then filed a motion to transfer venue to which the plaintiff responded and the defendant replied. For the reasons set forth below, the defendant's motion to transfer venue is granted.

### II. Facts

The plaintiff, John Klay ("Klay"), has at all times relevant herein been insured under six disability insurance policies ("insurance policies") issued by the defendant, AXA Equitable Life

Insurance Company ("AXA").[1]  If Klay could not continue to work as a cardiothoracic and vascular surgeon, Klay was entitled, under each of the six insurance policies, to the total disability policy limits.

Early in 2006, Klay allegedly became seriously ill and was diagnosed with uncontrolled diabetes mellitus, uncontrolled hypertension, hyperlipidemia, and exogenous obesity.  Klay alleges that although he began immediate treatment, his condition worsened, and in April of 2007, he suffered a deep vein thrombosis and bilateral pulmonary embolus which almost resulted in death.  Accordingly, since approximately July of 2006, Klay alleges that he has been totally disabled, unable to perform the substantial duties that he previously performed as a cardiothoracic and vascular surgeon, and has qualified for total disability benefits under the insurance policies issued by AXA.

Klay submitted a claim to AXA for total disability coverage under the policies, to which Klay claims that AXA has delayed the investigation and settlement of with unreasonable demands for unnecessary and cumulative documentation designed to intimidate Klay.  Klay now seeks a declaratory judgment, seeking this Court's determination that AXA must provide coverage to Klay for his claim

---

[1] The six insurance policies issued by AXA to Klay are as follows:  Policy No. 84 702 339, effective February 26, 1984; Policy No. PN 85 706 366, effective June 26, 1985; Policy No. M 89 730 560, effective December 12, 1989; Policy No. PN 88 703 537, effective February 26, 1988; Policy No. PJ 87 702 631, effective April 7, 1987; and Policy No. PN 88 713 268, effective June 26, 1988.

2

of total disability, that AXA is obligated to satisfy Klay's claim of total disability, and that AXA's failure so far to satisfy Klay's claim has caused Klay damages. Klay is also asserting claims of breach of contract, violation of the covenant of good faith and fair dealing, and violation of the Unfair Claims Settlement Practices Act of West Virginia, West Virginia Code § 33-11-4(9).[2]

### III. Applicable Law

Title 28, United States Code, Section 1404(a) provides a federal court with the discretion to transfer a case to another district in which it could have originally been brought "[f]or the convenience of the parties and witnesses, in the interest of justice . . . ." This rule is intended to allow a court to transfer venue in order to "make trial of a case easy, expeditious and inexpensive." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947) (superceded by statute on other grounds).

The decision to transfer venue is left to the sound discretion of the trial court. Southern Ry. Co. v. Madden, 235 F.2d 198, 201 (4th Cir. 1956). In making this determination, a court should consider:

> (1) ease of access to sources of proof; (2) the convenience of parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the possibility of a view; (6) the interest in having local controversies decided at home; and (7) the interests of justice.

---

[2]Klay is also seeking punitive damages.

Alpha Welding & Fabricating Co. v. Todd Heller, Inc., 837 F. Supp. 172, 175 (S.D. W. Va. 1993). The movant, here AXA, typically bears the burden of demonstrating that transfer is proper. Versol B.V. v. Hunter Douglas, Inc., 806 F. Supp. 582, 592 (E.D. Va. 1992). The Supreme Court of the United States has further stated that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Gulf Oil, 330 U.S. at 508.

## IV. Discussion

AXA argues that this case should be transferred to the Western District of Pennsylvania because the six insurance policies that were issued to Klay, and are now the subject of this litigation, were delivered to him while Klay resided in Allegheny County, Pennsylvania, and furthermore, Klay's residence for venue purposes is Pennsylvania. More specifically, in contending that United States District Court for the Western District of Pennsylvania is a more appropriate forum, AXA claims that Klay's recorded address on the six insurance policies is a Pennsylvania address, and his current residence on the policies is listed as Chalk Hill, Fayette County, Pennsylvania; that with the exception of only one, each policy application sought the benefit of a group discount offered through Klay's employment at West Penn Hospital in Pittsburgh; that although Klay purchased an approximate 891 square foot home in West Virginia when he began practicing in the state in 2001, Klay still maintains his home and vineyard estate in Chalk Hill, Pennsylvania,

which approximates to be 204.5 acres; that Klay's federal income tax returns for 2001-2006 identify Klay's home address as Chalk Hill, Pennsylvania; and that his W-2 forms for medical practices in West Virginia and Ohio were both sent to the Chalk Hill address. Furthermore, AXA argues that key witnesses reside in Pennsylvania, and Pennsylvania law should be applied in resolving the issue of liability under the six insurance policies.

Klay responds that this case should remain in this Court because he is both employed and resides in West Virginia. Additionally, because he has received continuing medical treatment in West Virginia since the diagnosis of his condition, the majority of physical evidence and witnesses remain in West Virginia, and he is a resident of West Virginia.

This Court recognizes that "'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" Lahan v. Nationwide Mut. Fire Ins. Co., 2008 WL 474085 (N.D. W. Va. Feb. 20, 2008) (unpublished) (citing Gulf Oil Corp v. Gilbert, 330 U.S. 501, 508 (1947)). Nevertheless, this Court also finds that, after considering the totality of all the factors, it is in the interest of justice to transfer this case. Although some considerations of convenience may weigh somewhat in favor of venue in this Court--for example, some of the witnesses and documents are located in this judicial district--the interests of justice militate heavily in favor of venue in the

Western District of Pennsylvania, primarily because Klay is not a resident of West Virginia for venue purposes.

In <u>Ion Beam Applications, S.A. v. Titan Corp.</u>, 156 F. Supp. 2d 552, 563 (E.D. Va. 2000), the court specified when a plaintiff's choice of forum could lose preference:

> In an ordinary case, the plaintiff's choice is indeed given great deference by the Court. However, where the plaintiff's choice of forum is a place where neither the plaintiff nor the defendant resides and where few or none of the events giving rise to the cause of action accrued, that plaintiff's choice loses its place status in the court's consideration.

Furthermore, under West Virginia law,

> a person may live in several different places but he or she can have only one domicile. Domicile is a place a person intends to retain as a permanent residence and go back to ultimately after moving away. <u>[A] change in residence for convenience in working conditions does not, without more, indicate a change in domicile.</u> [T]he important facts in determining the domicile of a person who has more than one residence are the physical character of each, the time spent and the things done in each place, and whether or not there is an intention to return to the original domicile.

<u>Predmore v. Predmore</u>, 522 S.E.2d 644, 646-47 (W. Va. 1999) (citations and quotations omitted) (emphasis added).

In this case, although Klay works and has purchased a small house in Wheeling, West Virginia, this Court finds that, at least for the purposes of this motion, Klay's domicile is Pennsylvania. Klay and his wife maintain a 204.5 acre home and vineyard in Chalk Hill, Pennsylvania. Despite Klay purchasing the West Virginia house in May of 2001, Klay continued to identify his address as Chalk Hill, Pennsylvania on his federal income tax returns.

Moreover, his W-2 forms for his medical practices in both West Virginia and Ohio were sent to his residence in Pennsylvania. Based upon these facts, there remains no evidence that Klay intended to make West Virginia his domicile. With little connection between Klay's claims and this judicial district, except that he is employed in Wheeling, West Virginia, and was diagnosed with his condition in this location, therefore, the facts weigh in favor of a transfer to a venue with more appropriate contacts.

Accordingly, this Court finds that the United States District Court for the Western District of Pennsylvania provides a more suitable forum in this case. As noted above, this Court holds that the plaintiff's domicile continues to be Pennsylvania. Although Klay has received treatment for his condition in West Virginia, medical records of his treatment should be easily accessible regardless of where the treating physician is located. Furthermore, to the extent that testimony from treating physicians is necessary, such witnesses are located no more than approximately one and one-half hours from Pittsburgh where one of the points of holding court in the Western District of Pennsylvania is located. Lastly, the plaintiff will not be prejudiced if venue is transferred because, at the very least, even the plaintiff admits in his complaint that he maintains dual residency in both Pennsylvania and West Virginia.

## V. Conclusion

For the above stated reasons, the defendant's motion to transfer the case to the United States District Court for the Western District of Pennsylvania is GRANTED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein and to the Clerk of the United States District Court for the Western District of Pennsylvania.

DATED: January 6, 2009

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE